Mr. Healy, please proceed. May it please the court. Yankton County is requesting this court declare as a matter of law that the Court of Claims erred in applying the incorrect legal test to the United States motion to dismiss and that Yankton County's claim was timely filed pursuant to the stabilization doctrine and demand this case for a trial on the merits. The court's mistake was to apply the inherently unknowable test of the accrual suspension rule when it should have applied the stabilization doctrine, which allows a claimant in a Fifth Amendment takings case that arises where the taking arises out of a gradual physical process such as erosion to delay filing its claim until the situation stabilizes. A situation stabilizes when it becomes clear that a gradual physical process put in motion by the government has affected a taking. I understand your position on this and I do think that the decision below could have more clearly articulated what test was being applied when, but I'm curious about what you think of the language on page 812 where it talks, the court says, in the instant case, the necessary reports, data, and photographs that collectively indicated the permanence of erosion were all available to plaintiffs no later than March 28, 2011. And in the context of this paragraph, the court is discussing the Banks case, which was applying the stabilization doctrine. So I'm wondering why this paragraph is not addressing the stabilization doctrine. Yes, Your Honor, the court does mention the stabilization doctrine within the opinion. However, the ultimate analysis that the court applies to the photographs, the data, and the reports that are available is whether that information made the claim inherently unknowable. I see where it refers to that test and addresses that in other places, but this paragraph to me perhaps reads as if it's also addressing the stabilization doctrine. And do you think that this still, this paragraph is addressing some of the accrual suspension? I do. I think that the, because if I'll refer the court back to Appendix Page 11 in the last paragraph on that page, the Court of Claims writes, in essence, plaintiff's argument that the Black & Veatch report was the first time plaintiff learned of the Gavin's Point Dam's potential impact on the bridges invokes the inherently unknowable prong of the accrual suspension rule. And that's the standard that the court held Yankton County to throughout its opinion. Despite the discussion of the stabilization doctrine, the court fails to address the other considerations that the court should have considered in determining whether the county's claim was timely under the stabilization doctrine. I guess one argument would be that you're right, there are some, there's a little bit of confusion and almost melding together of the stabilization doctrine and the accrual suspension rule. In her opinion, on page 11, not just there, but up above earlier in the first paragraph as well. But when you get to Appendix Page 12, and in particular, the portion that Judge Stoll pointed to in the instant case, the necessary reports, et cetera, all say the permanence of the aversion were available to plaintiff no longer than the state, even if she misstated the law earlier, her fact-finding, it seems to me, is not clearly erroneous. And with that fact-finding, no conclusion can be reached but that it had stabilized by that point. So it seems to me, even though the law may have gotten melded together a little bit on the prior page, this is a fact-finding which, under the correct articulation of the law, absolutely lands you in the same place that you're in right now. And so how is that fact-finding clearly erroneous? If you can't convince me of that, you can't win this case. Because, Your Honor, that fact-finding, it does, or it could prove that the claim was knowable under the accrual suspension. You can't get my vote. Maybe you'd still win the case, but you wouldn't have my vote. So I just wanted to clarify that. So, okay, what were you saying? Thank you, Your Honor. I was saying, while that fact-finding by the court may support a conclusion under the accrual suspension rule that the claim was knowable, the court does not ultimately find that it should have become clear to Yankton County that a permanent taking has occurred. No, it said permanence of the erosion. That's the fact-finding. That's what you're missing. That sentence says in the instant case, all this evidence that she articulates indicates that the permanence of the erosion. That's not a sentence about accrual. That's a sentence about stabilization. I'm sorry, Your Honor, which sentence is the court referring to? Page 12, the second to last paragraph, the in the instant case sentence. That sentence is about nothing other than stabilization because it's about permanence. When did the plaintiff become, could come to know about the permanence of the erosion? And I think that the court found there that those documents were available. The claimant, the documents were available for a claimant to make a conclusion that this taking had occurred prior to the tolling of the statute of limitations. But that's not the proper test that should be applied. The availability... You keep saying when the taking occurred. Isn't it when the taking became permanent? When a permanent physical taking became clear to the plaintiffs, when it became clear to Yankton County that a permanent physical taking had occurred. Is it an objective standard or does it have to be when it's clear to Yankton County or whether it's clear to an objective party in their position? When it would become clear to an objective party in the county's position, yes. And the county, just to be clear, was aware of problems because they did the riprap six or seven separate times, starting in 94 all the way through 2004. They kept going after that bridge, trying to mitigate the damage, trying to protect it, whatever. So they knew there were some serious problems with the bridge. And then she finds that all of these reports, data, and photographs that show the permanence of the erosion for plaintiffs to understand that a permanent taking had occurred were all available to be found. So you have a plaintiff who knows he's got damage. He's taking constant efforts to mitigate. And you've got all this data available that she says should have told the objective person at that point in time that this erosion was permanent damage. I disagree with your last statement, Your Honor, that the judge found that this should have established to Yankton County that a permanent taking had occurred. What the court of claims found was that it could have. It could have. And that's a far different standard than should it have become clear to a reasonably prudent county commission that a permanent physical taking had occurred. This court has instructed in bowling that if we establish that we didn't know, the county did not know. Should have, could have thing. I don't see that. In looking at the language that we're all focusing on on page A12, in the first full paragraph, or that's actually the second full paragraph at the end, it says, in the instant case, the necessary reports, data, photographs that had collectively indicated the permanence of erosion were all available to plaintiff. Plaintiff therefore had access on or before that date to all the information necessary to determine the permanent nature of the alleged taking of its property. Where's this should have, could have concept? Availability of the documents themselves, all of the information necessary is not what's required. What's required? A finding of the court that it had become clear that a permanent physical taking had occurred or that it could have become clear, or that it should have. Well, the court made that finding. The court made the finding that these documents were publicly available and that some of them went back as far as 1995, 96, and that your client, because of that, your client is held to the standard of having access to those documents. Under the accrual suspension rule, that is correct, Your Honor. Under the stabilization doctrine, that is not correct. The standard is when it becomes clear to a reasonable group. Even under the stabilization doctrine, at some point, stabilization occurs. Correct, Your Honor. That's when the, that's when the landowner knew that the taking was permanent. Correct. The court here made a finding that there was documents out there publicly available to the, to your client that showed that this taking was permanent. I mean, the facts read it. You see the pilings, there's riprap being built, the land gets bigger and bigger, and Farmer Jones Barn now is three feet from the river. You know, at some point, you're, and then there's knowledge also as far as 1995, other reports where the, the court says, the Army court says that, that the James River is going to be affected. Degradation to the James River is going to be affected because of the spillway off of the dam. Okay, I'm going to try to break those apart a little bit and get to the argument that I want to present to this court, which is, once it's determined that the county was unaware that a permanent physical taking had occurred. Okay, we've alleged that. It's in the record through an affidavit. The test under the stabilization doctrine then is when should it be, should have it become clear to Yankton County. And in making that determination, this court is instructed in bowling that there are a number of considerations. There are a number of things, factors that the court should take into consideration that would establish why did the county not file a suit sooner? Why did it not investigate sooner? There's a report in 1989. There's erosion in 1994. If the county was justified in its ignorance of the existence of the claim, then the statute of limitations does not begin. That's accrual suspension, right? That's the accrual suspension doctrine where you're talking about the county was justified. Or are you just saying they're justified in not knowing? No objective party in the county's position would have known of the permanence of the taking. Correct. Okay, why not? It applies in the stabilization doctrine. I assume you're going to say because they thought the riprap was a permanent fix and some things like that. So why not? Right, and a reasonably prudent county looking at this situation. Here's Yankton County, its bridge is being eroded. If you look to the appendix, page 189, it's a portion of the report from Dr. Rubenheine, and it shows a correlation between severe flooding on the James River and the need to install riprap. Every time there was a severe flood, shortly thereafter, there would be a need to install riprap. The county's looking at this problem, and it's reasonable for the county to say, okay, once there's a flood, the floodwaters are coming through, they're washing out the area that supports our pilings and washing out the banks. What Dr. Heine also explains on page 187 is that in periods of high flood on the James, which flows into the Missouri, the Corps' operations manual instructed them to reduce flows on the Missouri River, increase flows on the James, which would increase that gradient from the James River into the Missouri, and cause even more water to rush through and to erode the banks and the bridge pilings. It was reasonable for the county to believe that the problems that their bridges were facing were the result of prolonged and epic flooding on the James River and not the Missouri River. But there was data, the Corps made a finding, there's data out there that counters that, that there's another reason. And it was well known that the spillway over the Gavin's Dam was degrading the Missouri, which in fact leads to the degradation of the James River. With all due respect, Your Honor, the existence of a report from 1989 should be reviewed in the context of what effect that would have on a reasonably prudent county commissioner. The fact that the Missouri River was degrading because of the dam and that was migrating up the James through a process called channel incision, what effect would, that may be clear, all of that science may be clear to a reasonably prudent geomorphologist or an engineer, but not to Yankton County, not to a rural county who does not employ a full-time engineer. They're faced with a problem that they believe is the result of epic flooding on the James River and they think they can fix it. And they try to do that for a number of years and they consult with engineers. And so you think this case is more like Banks or Applegate, I think, where there was some intervening activity. In those cases by the government that made it so it wasn't clear when stabilization occurred or prolonged or delayed stabilization. Absolutely, Your Honor, but I believe that the intervening actions by the government are only one factor for the court to consider in determining whether the county was justifiable or not and not knowing that its claim had accrued. And the court should also consider the factors of bullying, irregular process of erosion, the difficulty in discerning where the government's easement begins and ends, and uncertainties in the terrain. Here you've got a county that owns a bridge 20 river miles away from Gavin's Point Dam on an entirely separate river and they're having epic flooding. Let me interrupt you for one more minute. I understand your position that government action shouldn't be the only thing that would make it so the stabilization was uncertain. Do you have any cases to that effect to support that? Besides Banks and Applegate are good cases for that position, however, those do involve government action. Do you know of any others that involve action other than government action? Because the government obviously, in this case, the government's taking the position that this doctrine wouldn't apply to you because it's not government action. So I was just wondering if you had any cases in response to that position. I don't, Your Honor. I think those cases make clear that the nature of the Corps of Engineers Act is one factor to be considered. And it shouldn't be viewed, as the Court of Claims does, as dispositive because we're not trying to determine whether the Corps' actions made it inherently unknowable for the county to know that its claim existed, right? We're not arguing that they concealed their act in some way. Only that the Corps' behavior here contributed to the uncertainty of the county. And the county's uncertainty is justifiable. The county was prudent in the way it consulted with engineers. Okay, Mr. Healy, you've used all your time, all your rebuttal time, and another minute and a half. So let's hear from the government and then I will restore a little bit of your rebuttal time. May it please the Court, my name is Joan Pepin on behalf of the United States. With me at council table is Carter Thurman. I'd like to first address this allegation that the Court of Federal Claims made an error in using the term inherently unknowable as if that were not applicable to this case. And I'm reading to you now from the plaintiff's brief below from pages 15 to 16. And they argued. What page? Pages 15 to 16 of their brief in the Court of Federal Claims. This is docket number 10 below. Their argument was, the impact of Gavin's Point Dam on the plaintiff's bridges was inherently unknowable because of the distance between the dam and the bridges and some other reasons. The Court of Federal Claims was rightly responding to the arguments that the parties had made before it. And they had argued that it was inherently unknowable and the Court of Federal Claims rightly found that it was not because, as the Court of Federal Claims rightly held, the plaintiff cannot delay the accrual of its claim by delaying its investigation. In this case, the plaintiffs clearly had knowledge in 1994 that they had a serious problem on their hands. They had received a report from their engineering firm saying, we're having bed degradation and bank erosion at the Fleegs Bridge. And it was serious enough that they took action. Did that knowledge at that time amount to a notice of a permanent taking? Yes, because what a permanent taking means as a court held in Bowling is a substantial encroachment on the property. Under the stabilization doctrine, which we all agree applies here. This isn't a case where there's any disagreement about that. The stabilization doctrine holds that a plaintiff's claim occurs when the property is substantially encroached or sometimes the word substantial inroads has been used and the extent of the damages is reasonably foreseeable. Can I ask you something? Do you have to know that it was the government that is encroaching? I don't think that's an element of encroachment, but it would be an element of knowledge of your claim. However, when you know that you've got a problem on your hands. So to make sure I understand what you're saying, you're saying that there's two different tests, accrual, suspension, and stabilization. And you're saying that knowledge that it's the government might not matter for stabilization? It doesn't. No, it's not the definition of substantial encroachment. But a claim would be, the stabilization doctrine, this is another, the Bowling is really the key case for this case. And this court held in Bowling that the stabilization doctrine is not an exception to the rules of claim accrual. It's an application of them. And those rules are the ordinary rule that your claim accrues when all the events which fix the government's liability have occurred. And the other ordinary rule that it accrues when you know or should have known. And I'll divert for a moment to address the distinction that Mr. Haley is trying to draw between could have known or should have known. There is no such distinction. This court has held that in Holmes and in Ingram. And we addressed that at footnote four in our brief. This court has held that the new or should have known standard is the same as the inherently unknowable standard. That they're interchangeable, but that inherently unknowable is more precise. Unknowable, if you could have known, it's not unknowable. So even if that wording is in here somewhere, it's not an error. It's the correct standard. But anyway. What do you make of the argument here that the court below confused the two doctrines and should have been applying the stabilization doctrine, but actually was just discussing the accrual suspension doctrine? I have two responses to that. The court was properly answering both arguments that were made by the plaintiffs. As I read to you from their brief, they made the accrual suspension. Where do you think is the best place where you think the court addresses stabilization? Not just in repeating the test, but actually makes sense. It's kind of throughout. The court did rely more. There's multiple formulations of that stabilization doctrine. One has been when it's apparent that- Can you point to us exactly where you're relying on? Can you point to us exactly the language you're relying on? Because you said it's throughout. I just want to know where. Well, let's see. It explains what the stabilization doctrine is on the top of page appendix 11, or the court's decision page 10. And then the language you pointed to, I believe it was you pointed to earlier on appendix page 12, about in this case, all the information was available to the plaintiff. It's, you know, I don't think- It used the formulation when it's apparent that a permanent taking has occurred. That's one formulation of the accrual suspension doctrine. The other one is the substantial encroachment. They're also both used in the same cases. They're not alternatives. In cases involving intermittent flooding, the permanence is an issue because one flood or two floods isn't necessarily a taking. It might be a tort. But when the intermittent flooding becomes inevitably recurring or permanent, then that's when it crosses the threshold to become a taking. And that's where the language of permanence enters into this standard. In this case, there's never really been any question that the erosion was not temporary. The land wasn't going to come back by itself. When they were putting that riprap, it was to armor the bed and prevent further erosion from occurring. So permanence isn't really an actual question. But they thought they were fixing the problem. I mean, there's some evidence. Well, they thought they were halting the problem, right? I don't think they thought it would make it- I'm sorry, I couldn't hear you because I was talking at the same time. Could you say that again, what you were saying? I think they thought they were halting the problem. Yes, not restoring it to what it was before, but stopping it from going any further. They thought that they were stopping it, but they were not. Well, apparently not. But why isn't this case like Banks? Because you've got the Isaac Walter Dam and the removal of that, combined with they thought that it was prolonged in epic flooding that was causing the problem, combined with the uncertain nature of the riprap's effect on the problem that could have made stabilization not occur until later. The key reason this is not like Banks and Applegate is because those cases explicitly relied on the fact that the government had conducted mitigation that destroyed the foreseeability future damages. Why didn't all these other things that I mentioned destroy the foreseeability? Assuming for a minute they did, just assuming for they did. Is it your position that that doesn't matter at all because it's only when the government takes action? For mitigation, it's only when the government takes action. A party taking- Just looking at stabilization, why couldn't other things, other factors impact the timing of stabilization even if those other things had nothing to do with the government's actions? Because it wouldn't have stopped the taking from occurring. If they take action to mitigate their damages, that is relevant to the damages. And this court held that in Bowling, which was an erosion stabilization doctrine case. The plaintiff's own efforts to mitigate the damages don't delay or prevent accrual of their claim. They just go to the amount of damages. And the Supreme Court said that in Dickinson as well. So their own efforts at mitigation, and you asked if there was any case to support the idea of a plaintiff's efforts at mitigation. Not just their efforts at mitigation, their view that it was prolonged and epic flooding. There's a number of factors here. Everybody agrees that as of 1989, the erosion hadn't moved up to the bridges that issue in this case because of the Isaac Walter Dam, right? The Isaac Walton Dam is a very interesting factor here. I mean, I think if this case were to go to trial, there'd be a question of intervening causation for removal of that dam. But I can accept that they may not subjectively have known. But what they could have done and should have done after they knew of problems in 1994 and had to take more action in 95 and had to take more action than 98 in 2002 and on and on. They could have launched an inquiry. They could have done exactly what they ultimately did do in 2011 and hired an engineering firm. Why do we have to keep doing this? Why aren't our efforts to fix this problem working? They chose to delay making the investigation until 17 years after their first injury. And that as a court of federal claims really held, the plaintiff cannot delay the approval of its claim by delaying its investigation when it had access to all of the necessary facts giving rise to its claim. If plaintiff was able to so delay, the six-year statute of limitations set forth in 28 U.S.C. 2501 would be superfluous. This court has also made a similar holding in the Menominee Tribe case that a plaintiff's choice not to launch an investigation into the cause of their injuries does not suspend accrual of their claim if the facts were knowable. And they were knowable. All they had to do was what they ultimately did do, just maybe after the second or third time they had to install riprap instead of after 17 years. Um, well, uh, does the court have any other questions? We ask you to affirm the Court of Federal Claims finding that this case occurred before April 6, 2011. Mr. Healy, restore two minutes of your rebuttal time. Thank you, Your Honor. Just briefly, uh, the stabilization doctrine and the accrual suspension rule are two separate and distinct doctrines. If you, to the court below, the county's brief was clear that our primary argument was that the claim had not accrued pursuant to the stabilization doctrine. We made a secondary argument that the accrual suspension rule applied. The key difference between the two doctrines is that under accrual suspension, the claim accrues if it's possible that the county knew. And under the stabilization doctrine, it has to have become clear. So you can have accrual under one but not the other. And that's the case that the Court of Claims just decided in Wealthy versus the United States where it had not, the information was available, but it had not become clear that a permanent taking had occurred. That's the situation here. Um, certainly there was enough information out there that if the county had launched that inquiry, they could have determined that this claim existed. But they didn't do that. And I implore this court to find that it was reasonable for them not to do that given all the circumstances surrounding this case. And at a minimum, the Court of Claims should have considered those factors from bowling and made a finding. Was the county justifiably uncertain? And if a review of the decision, the court did not make that finding. One thing on the Isaac Walton Dam, it did create significant uncertainty. Appendix page 225, this is the 2011 Black and Beach Report. So this is what the county received in November of 2011. An engineering firm the county hired wrote, it is possible that degradation of the Missouri River is also affecting the James River. However, a low head dam, Isaac Walton Dam, exists about 780 feet downstream from the railroad bridge. This is the 1989. No, Your Honor, this is the 2011 report that Black and Beach gave the Yankton County on November 17th. This dam currently provides some level of protection against migrating degradation. So as late as 2011, engineers, professional engineers, are telling the county, well, it's possible that it's a degradation on the Missouri, but there's this Isaac Walton Dam. But that Isaac Walton Dam was removed in 1989 or early 90s. What page is that in the appendix? This is page 225 of the appendix. With that, I would just ask that the court reverse the court of claims. This is the kind of case that the stabilization doctrine and its lenient accrual, lenient application of accrual suspension of accrual principles was developed for. Thank you. Okay, I thank both counsel for their arguments. The case is taken under submission.